

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.

SHANE SICHTING,

Defendant/Movant.

Cause No. CR 07-61-M-DWM
CV 10-48-M-DWM

ORDER DENYING § 2255 MOTION
AND DENYING CERTIFICATE
OF APPEALABILITY

On May 10, 2010, Defendant/Movant Shane Sichting ("Sichting"), a federal

prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence,

pursuant to 28 U.S.C. § 2255. On May 21, 2010, Sichting filed a supplement.

## I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 1

and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see also Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

## II. Background

On September 24, 2007, a grand jury indicted Sichting on one count of murder for hire, a violation of 18 U.S.C. § 1958(a). Assistant Federal Defender John Rhodes was appointed to represent him. Indictment (doc. 11); Minutes (docs. 2, 12).

Trial commenced on December 3, 2007. Ronald Morales, the witness who drew Sichting's plan to the attention of law enforcement, was a life-long criminal who could be counted on to deceive others and possibly himself about nearly anything. The jury knew this. When Morales was called to the stand, the prosecutor's first question on direct examination was, "Mr. Morales, the first thing I'd like to have you do is tell the jury about your criminal history, if you can. To the best of your recollection, describe the different convictions you've had over the course of your life." Trial Tr. at 300:7-10. Morales's memory was too short for his criminal history, but he told the jury he grew up in Los Angeles and was a gang member, was arrested for assault, grand theft auto, burglary, and a host of other offenses, including "four or five false information to police" charges. Id. at 300:11-

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 2

24. He admitted that he ignores the law and takes drugs. Id. at 301:14-302:19.

Within the first few minutes of his direct examination, it was well-established that he

had "very little credibility," as the prosecution said in its closing argument. Id. at

539:21.

Morales testified that Sichting approached him at Sichting's garage in Libby,

Montana, and asked if he could find someone in Mexico who would kill Sichting's

wife for money. Morales agreed to do so. He then fled to Eugene, Oregon, intending

to keep taking money from Sichting for as long as Sichting kept sending it, without

doing what he had agreed to do to earn it. Sichting, however, called Morales several

times to say "[y]ou were supposed to come take care of this motor" and to ask "what

happened to your mechanic" – "motor" being a code word for "wife" and "mechanic"

for "hit man." Trial. Tr. at 323:324:1. Eventually, working with the FBI, Morales

agreed to return to Libby from Eugene to arrange the "motor" matter. Morales

testified that he came up with a cover story for Sichting's wire transfers of money to

him:

> I said, *Okay. I'm coming up there but I need some more money. I need you to send me my money that you owe me*, which was the $10,000. And so he had said, he goes, *Well, how do you want me to send this?* I said, *Send it Western Union.* He said, *No, I can't do that.*
>      I said, *Well, look, send it through your bank and just send it to my son's account.* I says, *This way* – he goes, *Well, I can't do it.* I says,

*Look, Shane, you got my truck. If anything comes up, you can say that you bought my truck and that's what you were sending money for, because you were buying my pickup.* He goes, *Okay,* and he agreed and he transferred over money through my son's account, I believe, three times.

Trial Tr. at 324:16-325:2.

This testimony, unworthy of belief by itself, was corroborated. Sichting wired $6850 from his bank account to Morales's son's account. Trial Tr. at 233:14-238:19, 417:12-420:20. Four of Sichting's friends testified that he talked at a Pizza Hut party about killing his wife – and talked in such detail that they became uncomfortable and changed the subject. Another friend said Sichting threatened to kill his wife and the two friends of his with whom she was staying because "it was the only way that he could show his – his kids that his mom – that their mom was a bad mom." Trial Tr. at 437:17-19. He wanted to kill his wife "[i]n front of the kids to show them this was his last resort to protect them, to protect those kids from their mother." Id. at 438:9-11. A Kalispell police officer posed as the "hit man" from Mexico. The officer testified that he said to Sichting, "Ronnie [Morales] told me that you wanted your wife killed," and Sichting responded by asking him if he was "wired" and then confirmed that he would be paid $10,000.00 when the job was done. Id. at 395:7-25.

Most importantly, the jury heard Sichting's own voice saying things that

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 4

proved his guilt. After Morales alerted law enforcement, the FBI began recording phone conversations between Morales and Sichting. Sichting told Morales he wanted someone from Mexico to come to Libby to "have that motor taken care of," Trial Tr. at 243:12-244:10 – a long trip for a mechanical problem, especially when both Sichting and Morales were mechanics themselves. In another conversation, Morales asked Sichting "if he wanted his wife taken care of," to which Sichting responded, "Well, I want that motor rebuilt." Id. at 341:20-25. Sichting told FBI agents that the wire transfers to Morales in Oregon were payments for his truck, Trial Tr. at 532:22-533:2, but Sichting also offered, in a recorded conversation with Morales, to send Morales's truck to Eugene on a flat-bed trailer, id. at 347:4-13. Sichting admitted to FBI agents that he paid cash to have his wife killed. Id. at 410:7-8, 523:16-22. He admitted the same fact to a friend in a taped phone call from jail. Id. at 454:8-455:2.

On December 5, 2007, the jury found Sichting guilty. Minutes (docs. 30, 32, 34); Verdict (doc. 39). On April 4, 2008, he was sentenced to serve ten years in prison, to be followed by a three-year term of supervised release. Minutes (doc. 50); Judgment (doc. 53) at 2-3.

Sichting appealed. On May 20, 2009, his conviction was affirmed. United States v. Sichting, No. 08-30115 (9th Cir. May 20, 2009). He timely filed his § 2255

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 5

motion on May 10, 2010.  28 U.S.C. § 2255(f)(1); Clay v. United States, 537 U.S. 522, 532 (2003).

### III. Sichting's Allegations

Sichting's motion makes six claims of ineffective assistance of counsel.  He contends that counsel deprived him of his right to choose whether to testify (Claim 1), failed to interview and call alibi witnesses (Claim 2), and failed to request a special finding by the jury on the verdict form to show the specific act supporting the interstate commerce element (Claim 3).  Mot. § 2255 (doc. 69) at 5; see also Br. in Supp. at 27-30 ¶¶ 4-15.  He also asserts that counsel did not investigate or call witnesses regarding Morales's character for untruthfulness or his prior convictions, arrests, and bad acts and did not obtain all relevant impeachment material from the prosecution or effectively cross-examine Morales about his sixty convictions and arrests (Claim 4).  Id. at 6.  Sichting also asserts cumulative error (Claim 5) and ineffective assistance of counsel on direct appeal (Claim 6).  Id. at 6-7.

In his supplement, Sichting adds a claim that counsel was ineffective because he failed to cross-examine Morales about the prosecution's promise not to prosecute Morales for failure to pay child support (Claim 7).  Sichting also contends the prosecution failed to correct Morales's false testimony (Claim 8).  Supp. (doc. 72) at

1.

## IV. Analysis

Strickland v. Washington, 466 U.S. 668 (1984), governs claims alleging
ineffective assistance of counsel.    First, Sichting must show that counsel's
performance fell below an objective standard of reasonableness. Id. at 687-88.
Second, he must show "a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different." Id. at 694. "A
reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. "[T]here is no reason for a court deciding an ineffective assistance
claim . . . even to address both components of the inquiry if the defendant makes an
insufficient showing on one." Id. at 697.

### A. Right to Testify and Alibi Witnesses re: Morales's Truck

The right to testify claim is foreclosed by United States v. Nohara, 3 F.3d 1239,
1243-44 (9th Cir. 1993). Nohara "argue[d] he was denied his Sixth Amendment right
to effective assistance of counsel because his lawyer waived his right to testify at trial
and neither his lawyer nor the court informed him of his right to testify." The court
held that "the court has no duty to advise the defendant of his right to testify, nor is
the court required to ensure that an on-the-record waiver has occurred." Id. at 1244.

Further, "[w]hen a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify." Id.

In addition, it is highly unlikely that Sichting would have been acquitted if he and his proffered alibi witnesses, Br. in Supp. at 22; Mot. § 2255 at 2; J. Sichting Aff. (doc. 70-2) at 2 ¶ 11, had testified that he intended to buy Morales's truck. Sichting told the FBI agents in his videotaped interview that the money he wired to Oregon was for Morales's truck, so the jury knew what his explanation was. But his explanation was contradicted by his own recorded offer to Morales to put the truck on a flatbed trailer and send it to Eugene. No matter how many witnesses testified that Sichting talked about buying Morales's truck, they could only say they got their information from Sichting. Sichting's own recorded voice spoke louder than his purported intentions. Claims 1 and 2 are denied.

## C. Jury Unanimity as to Act Underlying Interstate Commerce Element

The jury was instructed that it must unanimously agree on the act establishing the interstate commerce element. It was not required to specify that act on the verdict form. Sichting might prevail on this claim if he could show prejudice, but he cannot. None of the evidence supporting the interstate commerce element was insufficient, as a matter of law, to support the verdict. Therefore, so long as the jury was

unanimous as to the facts supporting jurisdiction – and the instructions ensured unanimity – Sichting was not prejudiced.

Sichting could conceivably have been prejudiced if there was any merit in his argument that the wire transfers related to Sichting's purchase of Morales's truck. But there is no reasonable probability that the jury might have made that finding and therefore no reasonable probability that Sichting was prejudiced by the general verdict form. Claim 3 is denied.

## D. Impeachment of Morales

Contrary to Sichting's claims, Morales's credibility was not crucial to his conviction. What convicted Sichting was not Morales's statements, but all the evidence corroborating them, including Sichting's own words and actions. The corroborating evidence would not have changed even if defense counsel had done all that Sichting now claims he should have done.

In addition, there is no reason to believe that the prosecution agreed not to prosecute Morales for failure to pay child support. The mere fact that Morales was not prosecuted does not show an agreement. Federal authorities do not and are not required to prosecute whenever the elements of a crime can be established. And, finally, Morales was asked to describe his criminal history "[t]o the best of your

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 9

recollection." Trial Tr. at 300:8-9. Even if Morales's history was longer than he
testified it was, that does not mean he lied about it. Who could have remembered it
all? There is no doubt that the jury understood they could not take Morales at his
word. There was no false testimony for the prosecution to correct. E.g., Hein v.
Sullivan, 601 F.3d 897, 912 (9th Cir. 2010). Claims 4, 7, and 8 are denied.

## E. Cumulative Error and Ineffective Assistance on Appeal

Sichting fails to show any error or identify any issue that could have succeeded
on appeal. Claims 5 and 6 are denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it
enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255
Proceedings.

### A. Governing Law

"A certificate of appealability may issue . . . only if the applicant has made a
substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c);
Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022,
1024 (9th Cir. 2000). To obtain a certificate, Sichting "must demonstrate that
reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Any doubt as to whether the applicant meets the standard is resolved in his favor. <u>Lambright</u>, 220 F.3d at 1025.

**B. Discussion**

Sichting's motion and supplement, read in light of the trial transcript, leave no doubt about the verdict. His claim that he was deprived of his right to testify is precluded by <u>United States v. Nohara</u>, 3 F.3d 1239, 1243-44 (9th Cir. 1993). It is also misguided because the jury watched a video recording in which Sichting, on the one hand, told the FBI that the wire transfers were payments for Morales's truck, and, on the other hand, heard a phone recording of Sichting offering to send Morales's truck to him on a flatbed trailer. For the same reasons, there is no reasonable probability that testimony from Sichting's "alibi" witnesses might have changed the outcome of the trial.

The jury was instructed that it must unanimously agree on the facts supporting the interstate commerce element, and Sichting has not identified any prejudice from the use of a general verdict form. Morales's credibility simply was not central to Sichting's conviction, so all of his claims that counsel did not do enough to undermine that credibility are insubstantial. There is no reason to believe that federal

authorities agreed not to prosecute Morales for failure to pay child support, and Morales's failure to recall the entirety of his very extensive criminal history is not evidence that he testified falsely. Certainly, there is no doubt that the jury got the message – Morales undoubtedly lacked credibility. Finally, because Sichting has not shown any error, his claims of cumulative error and ineffective assistance on appeal are insupportable.

Sichting was convicted because the jury heard testimony and evidence corroborating Morales's testimony. Sichting himself referred to his wife as a "motor" that needed to be "rebuilt" by a "mechanic" from Mexico and admitted to FBI agents that he paid cash to have his wife killed. Sichting's claims of ineffective assistance of counsel are insubstantial. A certificate of appealability is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Sichting's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 69) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Sichting files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 10-48-M-DWM are terminated and shall close the civil file by entering judgment

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 12

in favor of the United States and against Sichting.

DATED this 27 day of May, 2010.

Donald W. Molloy
United States District Court